IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KELLY BIRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07CV00959 |
| | ) | |
| WALTOM, LLC D/B/A WALTOM | ) | |
| RACING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

Beaty, Chief Judge.

This case arises out of a contract dispute between Plaintiff Kelly Bires ("Bires" or "Plaintiff") and Defendant WalTom, LLC d/b/a WalTom Racing, LLC ("WalTom" or "Defendant"). The contract at issue is a Professional Driving and Sponsorship Agreement (the "Agreement") entered into by the parties on February 9, 2006. Plaintiff filed suit in the General Court of Justice, Superior Court Division in Rowan County, North Carolina, seeking a declaratory judgment that the "purported contract is null, void, invalid and unenforceable and that, therefore, Plaintiff has not [sic] duties or obligations thereunder." [Doc. #3] In December 2007, Defendant removed the action to this Court based on diversity jurisdiction. On January 25, 2008, Defendant filed a Motion to Transfer Venue [Doc. # 9] to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Defendant's Motion to Transfer Venue [Doc. #9] will be GRANTED.

## I. FACTUAL BACKGROUND

Defendant is a limited liability company organized under the laws of the State of Illinois with its principal place of business in Riverside, Cook County, Illinois. Defendant is managed in, and both of its Managing Members, Walter and Tom Gleitsman, reside in Illinois. Defendant was formed in Illinois in 2000 to field an auto racing team in The American Speed Association ("ASA") Series. Defendant has two race shops: one in Burr Ridge, Illinois, and one in Pewaukee, Wisconsin.

In 2004, Defendant began a Driver Development Program to educate and train young drivers who demonstrated superior ability and talent in motor sports. According to the facts as alleged by Plaintiff in the Complaint, in October, 2005, Plaintiff applied for a position with Defendant's ASA Late Model team. Shortly thereafter in November, 2005, Defendant hosted a driving test in Hudson, North Carolina, to find its next Development Driver, in which Plaintiff participated. Plaintiff further alleges that "after Plaintiff's successful driving performance in Hudson, North Carolina, Defendant contacted Plaintiff and demanded that he participate in additional testing in Pensacola, Florida, in order to have an opportunity to race for Defendant in 2006." (Complaint ¶ 10) The Complaint further alleges that after the Pensacola, Florida testing, Defendant offered Plaintiff a position as the driver of an ASA late model racecar. Plaintiff then leased an apartment near Defendant's race shop in Wisconsin and began training for Defendant.[1]

---

[1] Plaintiff is a Wisconsin native and lived in Wisconsin before and during the time he drove for Defendant. He did not move to North Carolina until after he stopped driving for Defendant. (Def. Mem. at 3-4.)

2

Defendant's counsel, an Illinois lawyer, subsequently prepared a draft of a written agreement with the managing partners in Illinois. Defendant presented Plaintiff with the draft agreement at an ASA banquet in Indiana. With the assistance of a Wisconsin attorney, Plaintiff requested and received several changes to the terms of the contract. Plaintiff signed the draft agreement that resulted from the negotiations in Wisconsin on February 7, 2006, and sent it to Defendant in Illinois. Defendant counter-signed the Agreement in Illinois on February 9, 2006.

At the conclusion of the 2006 season, Plaintiff ceased working for Defendant and began driving for another company. While Plaintiff now seeks to have the entire Agreement declared unenforceable, his dispute is essentially with the section of the Agreement entitled "Royalties." That section requires that Plaintiff pay royalties to Defendant from all future race-related earnings for ten years after he ceases driving for Defendant in consideration for the salary, the substantial costs and expenses advanced, and the advice, counsel, training, and mentoring provided by Defendant for the benefit of Plaintiff.

The Agreement also contains a forum-selection/choice-of-law clause which Defendant in its Motion to Transfer Venue now seeks to enforce. That provision reads:

> <u>Illinois Law Applies</u>: This Agreement shall be deemed to be executed in the State of Illinois and shall be construed in accordance with the laws of said State, and any action to enforce or interpret the terms hereof shall be brought exclusively in the courts of Cook County, IL. In the event any provision hereof shall for any reason be found invalid, illegal or unenforceable, then, and in any such event, the same shall not affect the validity of the remaining portion and portions hereof.

## II. DISCUSSION

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other

district where it might have been brought "[for] convenience of the parties, in the interest of justice." 28 U.S.C. § 1404(a). As the Supreme Court has noted:

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors.

Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (internal quotation and citation omitted). There can be no dispute that this action could have been brought in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a)(1), because Defendant is organized under the laws of the State of Illinois and has its principal place of business there. What the parties dispute here is whether a transfer of venue in this case would be in the interest of justice.

"Ordinarily the burden to show that a transfer of venue would be in the interest of justice is on the party seeking the transfer." Price v. Leasecomm Corp., No. 1:03CV685, 2004 WL 727028, *3 (M.D.N.C. Mar. 31, 2004) (citing Cable-La, Inc. v. Williams Commc'ns, Inc., 104 F. Supp. 2d 569, 574 (M.D.N.C. 1999)). "However, a valid forum-selection clause shifts the burden from the party seeking transfer to the party opposing enforcement of the clause." Id. With this standard in mind, the Court now turns to address the merits of Defendant's Motion to Transfer Venue.

A. Forum-Selection Clause

Before the "case-specific factors" are balanced under § 1404(a) and before the forum-selection clause can shift the burden of proof, the Court must first determine whether the

4

forum-selection clause is valid. Id. at 4; Republic Mortgage Ins. Co. v. Brightware, Inc., 35 F. Supp. 2d. 482, 484 (M.D.N.C. 1999). On a motion to transfer venue under § 1404(a), the validity of a forum-selection clause is determined with reference to federal law. Stewart, 487 U.S. at 28, 108 S. Ct. at 2243. Under federal common law, forum-selection and choice-of-law clauses are presumptively valid and should be enforced unless the opposing party clearly shows that enforcement is unreasonable under the circumstances. Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)). Forum-selection and choice-of-law clauses may be found unreasonable if:

> (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

Allen, 94 F.3d at 928 (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595, 111 S. Ct. 1522, 1528, 113 L. Ed. 2d 622 (1991); M/S Bremen, 407 U.S. at 12-13).

1. Fraud and Overreaching

Plaintiff, as the party opposing transfer of venue, first argues that the entire contract is unconscionable and resulted from overreaching, and that therefore, the forum-selection clause must also be found to be unconscionable and induced by overreaching. However, "[t]he party seeking to avoid enforcement of the clause may not succeed by alleging fraud in the inducement of the contract itself. Instead, [he] must show that the inclusion of that particular clause was the product of fraud or coercion." Price, 2004 WL 727028, at *4 (citing Sherk v. Alberto-Culver

5

Co., 417 U.S. 506, 519 n.14, 94 S. Ct. 2449, 2457, 41 L. Ed. 2d 270 (1974); Allen, 94 F.3d at 928

(agreeing without discussion that the district court properly found no evidence of fraud where

there was no fraud in the inclusion of the forum clauses)); see also Bassett Seamless Guttering,

Inc. v. GutterGuard, LLC, No. 1:05CV00184, 2006 WL 156874, *4 (M.D.N.C. Jan. 20, 2006)

("To show that the forum-selection clause is unreasonable based on fraud, Plaintiff would need

to show that inclusion of the forum-selection clause *itself* was the product of fraud or coercion"

(emphasis in original)).

Plaintiff objects that he was "forced to sign a document that he was able to provide very

little negotiation on" and claims that the parties' unequal bargaining power resulted in an

"overreaching and unconscionable contract." (Pl. Mem. Opp. at 9) The Court finds that

Plaintiff's allegations of overreaching go only to the inducement of the contract; he has not

alleged any fraud or overreaching in the inclusion of the forum-selection clause itself. Plaintiff

was represented by an attorney in the negotiations and was able to request and receive some

changes to the Agreement. Defendant contends that Plaintiff never made any objection to the

forum-selection clause and Plaintiff does not dispute this assertion. Furthermore, upon

examination of the Agreement which Plaintiff attached to his Complaint, Plaintiff's handwritten

name and address appears directly above the forum-selection and choice-of-law clause along

with Plaintiff's initials directly below it. Consequently, the Court concludes that Plaintiff has not

established that the forum-selection clause was induced by fraud or overreaching.

2. Inconvenience of the Forum

In opposing Defendant's Motion to Transfer Venue, Plaintiff further argues that by

6

transferring this action to the Northern District of Illinois, he will be deprived of his day in court because of "grave inconvenience or unfairness." The Court finds that Plaintiff will not be deprived of his day in court by a transfer of venue. The Court recognizes that litigating in Illinois instead of North Carolina would likely be more inconvenient and more costly for Plaintiff. However, "[a] party seeking to avoid a forum selection clause must prove *more than* the inconvenience of litigating in a distant forum. . ." <u>Price</u>, 2004 WL at *5. Plaintiff has not done so here. Further, the Court notes that it would be equally inconvenient for Defendant and its witnesses to travel to North Carolina to litigate this dispute. Thus, the Court concludes that Plaintiff has not met his burden to show the "grave inconvenience or unfairness" of the forum-selection clause.

### 3. Unfairness of the Chosen Law

Plaintiff also argues that applying Illinois law in this case in accordance with the forum-selection clause would be unfair. Plaintiff's argument, however, is based upon his allegation that an oral agreement was formed in North Carolina after a driver test in November 2005. To that end, Plaintiff contends that North Carolina law should be applied. However, the Court finds that Illinois law would govern the parties' dispute even if the Agreement did not contain forum-selection and choice-of-law provisions. If this Court retains this case, sitting in diversity it would apply the choice-of-law rules of North Carolina. <u>Burris Chem. v. USX Corp.</u>, 10 F.3d 243, 245 n.7 (4th Cir. 1993); <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1983). Under North Carolina law, the interpretation of a contract is governed by the law of the state where the contract was made. <u>Fried v. N. River Ins. Co.</u>, 710 F.2d 1022, 1024 (4th

Cir. 1983); See also, Tanglewood Land Co., Inc. v. Byrd, 299 N.C. 260, 261 S.E.2d 655, 656 (1980) (observing the presumption that interpretation of a contract is governed by the law of the place where the contract was made). Under North Carolina law, a contract is formed where the final act of acceptance takes place. Goldman v. Parkland of Dallas, Inc., 176 S.E.2d 784, 787 (N.C. 1970); Kohler Co. v. McIvor, 628 S.E.2d 817, 820 (N.C. Ct. App. 2006).

Plaintiff contends that because the "real agreement" was orally formed in North Carolina in November 2005, the final act of acceptance took place in North Carolina. However, Plaintiff's contentions in opposition to Defendant's motion are in direct contradiction to his Complaint. In the Complaint, Plaintiff alleges that he was invited to participate in a test race in North Carolina and that "after Plaintiff's successful driving performance . . . Defendant contacted Plaintiff and demanded that he participate in additional testing in Pensacola, Florida, in order to have an opportunity to race for the Defendant in 2006." By Plaintiff's own admission, "*after the Pensacola, Florida testing*, Defendant offered Plaintiff a position as the driver of Defendant's #89 ASA Late Model racecar . . ." (emphasis added). The Florida driver test did not take place until December 3, 2005. Considering Plaintiff's own allegations, the Court finds that Plaintiff had not yet been offered a position as driver for the Defendant when in North Carolina for the driver test. Therefore, the final act of acceptance could not have taken place in North Carolina immediately following the November 2005 test.

Furthermore, a separate written contract entered into between the parties reveals that the parties had merely opened negotiations in North Carolina, and had not yet entered into a final agreement. On December 2, 2005, following the November 2005 driver test in North Carolina

8

and the December 2005 driver test in Florida, Plaintiff and WalTom entered into a separate written agreement, a "stand-still" agreement, whereby Plaintiff and another driver agreed not to enter into negotiations with another race team for 45 days. The "stand-still" agreement provided that on or before January 14, 2006, "WalTom agrees to notify Driver of their intentions via formal driving contract or a release of responsibility allowing Driver to then pursue other driving opportunities. The actual terms and conditions of the formal driving contract shall be subject to the mutual agreement of WalTom and Driver." (Def. Reply Mem. at 3) The "stand-still" agreement further demonstrates that Plaintiff and Defendant were still in the negotiation stage after the driver test in North Carolina, and that any offer to drive for WalTom would be in the form of a formal contract subject to the mutual agreement of both parties.

A formal agreement, the Agreement at issue in this dispute, was signed by Plaintiff on February 7, 2006, in Wisconsin. WalTom counter-signed the agreement on February 9, 2006, in Illinois. The Court finds that this counter-signing was the final act of acceptance. Consequently, because the contract was made in Illinois, Illinois law would govern this dispute even if the action were heard by this Court in North Carolina.

Finally, under North Carolina choice-of-law rules, the presumption that interpretation of the contract is governed by the law of the place where the contract was made may be overcome by the presence of a choice-of-law provision in a contract. Vovlo Const. Equipment N. Amer., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581 (4th Cir. 2004)(citing Buetel v. Lumber Mut. Ins. Co., 134 N.C.App. 626, 518 S.E.2d 205, 209 (1999)). In this case, the choice-of-law provision at issue states that Illinois law will apply. Consequently, North Carolina choice-of-

law rules leave no doubt that Illinois law will apply to this dispute. Therefore, Plaintiff's contention that applying Illinois law would in this case be unfair is without merit.

### 4. Public Policy

Finally, in opposition to Defendant's motion, Plaintiff argues that enforcing the forum-selection clause would be contrary to North Carolina public policy as set forth in N.C. Gen. Stat. § 22B-3. Under Section 22B-3, a forum-selection clause *per se* contravenes North Carolina public policy if it was entered into in North Carolina and requires the prosecution of the action to be instituted or heard in another state. Id. Forum-selection clauses entered into in other states, however, are given effect. See Price at *15 (citing Key Motorsports, Inc. v. Speedvision Network, L.L.C., 40 F. Supp. 2d 344, 349 (M.D.N.C. 1999) as "finding N.C.G.S. § 22B-3 inapplicable where contract negotiated in North Carolina was counter-signed in another state"); Szymczyk, 168 N.C. App. at 187, 606 S.E.2d at 733. The Court has determined that the Agreement was entered into in Illinois. Thus, N.C. Gen. Stat. § 22B-3 is inapplicable. Therefore, the Court finds that enforcing the forum-selection clause would not contravene public policy.[2]

Having considered each of the four factors the Court must consider in determining the validity of the forum-selection clause, the Court concludes that the forum-selection clause in the Agreement at issue in this dispute is valid. The Court will now consider the additional factors in deciding whether to transfer this action pursuant to § 1404.

---

[2] Likewise, for the reasons previously discussed in this Memorandum Opinion, the Court notes that the forum-selection clause is valid and enforceable regardless of whether the royalty provision challenged by Plaintiff may ultimately be found to be unconscionable.

10

B.  Transfer of Venue

Having determined that the forum-selection clause is valid, the burden shifts to Plaintiff to show "exceptional facts" which would demonstrate that transfer of venue would be unjust or unreasonable.  Cable-La, 104 F. Supp. 2d at 575 (citing Nizam's Inst. of Med. Scis. v. Exchange Techs., Inc., 28 F.3d 1210, No. 93-2196, 1994 WL 319187, *2 (4th Cir. July 5, 1994). While the valid forum-selection clause should not be afforded dispositive weight, Stewart, 487 U.S. at 31, it is a "significant factor that figures centrally" in a § 1404(a) analysis.  Id. at 29.

When ruling on a § 1404(a) motion to transfer, courts consider and weigh the following factors:  (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) relative ease of access to sources of proof; (4) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (5) possibility of a view of the premises, if appropriate; (6) enforceability of a judgment, if one is obtained; (7) relative advantage and obstacles to a fair trial; (8) other practicable problems that make a trial easy, expeditious, and inexpensive; (9) administrative difficulties of court congestion; (10) local interest in having localized controversies settled at home; and (11) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action. Rice v. Bellsouth Adver. & Pub. Corp., 240 F. Supp. 2d 526, 529 (W.D.N.C. 2002).

The parties have agreed that the fifth factor is neutral.  Moreover, the Court finds that the second and eighth factors are also not determinative in this matter.  These factors relate to the cost of adjudicating this dispute in a distant forum, where evidence and witnesses may not be easily accessible.  In this case, one party will inevitably have to bear the cost of traveling to

another state to litigate this dispute. The sixth factor, the enforceability of judgment, does not impact the Court's decision in any significant manner as neither party has argued that it would be more difficult to enforce a judgment in either jurisdiction. Finally, having found no particular difficulties concerning court congestion in either district, the Court concludes that the ninth factor is also neutral. Thus, having determined that the second, fifth, sixth, eighth, and ninth factors do not weigh in favor of either transferring or retaining this matter, the Court will turn to consider the factors one, three, four, seven, ten, and eleven – all of which the Court ultimately finds weigh in favor of transfer.

### 1. Plaintiff's Choice of Forum

First, with regard to Plaintiff's initial choice of forum, "[t]he federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." Republic Mortgage, 35 F. Supp. 2d at 486. To that end, the Court notes that Plaintiff's choice of forum would seemingly favor North Carolina, since Plaintiff filed suit in North Carolina state court. "However, these factors must be viewed with reference to 'the parties' expressed preference' for [Illinois] and 'in light of the forum-selection clause.'" Republic Mortgage, 35 F. Supp. 2d at 486 (quoting Stewart, 487 U.S. at 29, 108 S. Ct. at 2244). "When a forum-selection clause is part of the balancing, as Stewart requires, it is more logical to consider the plaintiff's initial choice of forum to be the forum that is contractually agreed upon." Republic Mortgage, 35 F. Supp. at 486. Therefore, Plaintiff's initial choice of forum was agreed upon when the Agreement was executed. That forum, according to the agreement, is Illinois. Consequently, Plaintiff's choice of forum actually weighs in favor of transferring this action.

## 2. Relative Ease of Access of Proof

This factor, with respect to the ease of access of proof, weighs in favor of transferring the action to Illinois. All of Defendant's corporate records are in Illinois and all of the documents in Defendant's possession relevant to the negotiations and execution of the Agreement are in Illinois. WalTom's principal place of business is in Illinois, where its Managing Members reside. John Mulvenna, the general manager of WalTom, likewise resides in Illinois. Defendant's employees live in Illinois or Wisconsin. Finally, the persons who negotiated the Agreement, including Plaintiff's attorney, are in Illinois and Wisconsin. Therefore, considering the ease of access of proof, these facts weigh in favor of transferring this case to the Northern District of Illinois.

## 3. Availability of Compulsory Process for Attendance of Witnesses

By Plaintiff's own admission, Plaintiff and WalTom's managing partners may well be the only necessary witnesses to this action. Plaintiff further admits that the only issues will be whether there was adequate consideration or whether the contract was otherwise unconscionable and/or the subject of overreaching and unequal bargaining power, and that those issues can be fully litigated without the need for additional unidentified witnesses. Consequently, Plaintiff has not identified any relevant witnesses that would be within the subpoena power of this Court. While Plaintiff's initial pleading and opposition to Defendant's motion to transfer indicate a preference for the hearing of this matter in North Carolina, Plaintiff has not indicated any unwillingness to travel to Illinois to prosecute this action. Further, if Plaintiff chooses to call witnesses on his behalf, he may bring them to Illinois without

13

a compulsory process. Therefore, the Court finds that the availability of a compulsory process for attendance of unwilling witnesses weighs in favor of transferring this action to Illinois.

### 4. Advantages and Obstacles to a Fair Trial

Defendant has argued that considering the origin and history of NASCAR, a North Carolina jury may be more sympathetic to an up-and-coming NASCAR driver. Plaintiff argues that Defendant would gain a "great advantage" by having this matter litigated in the Northern District of Illinois because that is where Defendant has its principal place of business. The Court finds that this factor weighs more heavily in favor of transferring the matter than retaining it here in North Carolina, where the litigation may perhaps be unduly influenced by an industry factor unrelated to the real issues of the contract dispute.

### 5. Interest in Having Local Controversies Settled at Home and Appropriateness of Forum and State Applying Law

With regard to the interest in having local controversies settled at home, and the appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action, these factors favor transfer of this case to the Northern District of Illinois. As the Court has previously explained, Illinois law will apply and as such, a district court there with more experience and expertise in applying Illinois contract law would be better suited to oversee this litigation. Further, the only connection this case has with North Carolina is Plaintiff's current residence and the November 2005 driver test. Accordingly, these factors – the interest in having local controversies settled at home, and the appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action,

14

also weigh in favor of transferring the matter to Illinois.

Having determined that the aforementioned case-specific balancing factors are either neutral, or weigh in favor or transferring this matter, the Court concludes that this matter should be transferred to the United States District Court for the Northern District of Illinois.

## III. CONCLUSION

The Court finds that the forum-selection clause at issue in the Agreement is not unjust or unreasonable, and is therefore valid. Further, having weighed the case-specific factors to determine if a transfer pursuant to 28 U.S.C. § 1404(a) is warranted, the Court finds that this matter should be transferred to the United States District Court for the Northern District of Illinois in accordance with the forum-selection clause. Therefore, Defendant's Motion to Transfer Venue [Doc. #9] will be GRANTED and this action will be transferred to the United States District Court for the Northern District of Illinois. An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This the 1st day of August, 2008.

United States District Judge